IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 5, 2014

**ANTONIO HAMPTON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 100511     Honorable Lee V. Coffee, Judge**

**No. W2013-00320-CCA-R3-PC  -  Filed March 19, 2014**

The Petitioner, Antonio Hampton, appeals the post-conviction court's denial of relief from his convictions for especially aggravated kidnapping and aggravated robbery. On appeal, the Petitioner argues that he received ineffective assistance of counsel and that his guilty pleas were not knowing, voluntary, and intelligent. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

James E. Thomas, for the Defendant-Appellant, Antonio Hampton.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Ann Schiller, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On January 21, 2010, the Petitioner was indicted by the Shelby County Grand Jury for especially aggravated kidnapping, aggravated robbery, and employing a firearm during a felony. On April 8, 2011, the Petitioner entered an Alford plea to especially aggravated kidnapping and aggravated robbery, for which the Petitioner received an effective sentence of 15 years. As part of the negotiated plea, the State dismissed the remaining count in the indictment.

At the April 8, 2011, guilty plea hearing, the State summarized the underlying facts as follows:

[O]n June 3rd of 2009, the victim was leaving the Mapco located at 2335 Airways in Memphis, and Shelby County, when he was approached by a person asking him for help.

That person pulled a handgun on the victim and robbed the victim at gunpoint, taking his wallet, credit cards[,] and cell phone. He then forced the victim to strip naked and placed him in the trunk of his own car and drove around the city for five hours until they wrecked the car.

The victim did not give [the Petitioner] permission to have his vehicle, take any of his property, and certainly did not give him permission to drive him around in his trunk.

. . . . [The Petitioner] was identified as the perpetrator of this crime.

The Petitioner's counsel, on behalf of the Petitioner, stipulated that "those would have been the facts the State would have put forward had this matter gone to trial" and requested that the trial court accept the Petitioner's best interest plea under the auspices of Alford v. North Carolina, 700 U.S. 25 (1970). The trial court then engaged in a dialogue with the Petitioner regarding his desire to plead guilty. The court explained to the Petitioner his rights and the rights he would be giving up by pleading guilty. The Petitioner indicated that he understood his rights and had discussed the plea agreement with his attorney. The court then explained the plea agreement to the Petitioner, including the sentences that would be imposed, and asked the Petitioner, "Is that your understanding [of the plea agreement]?" The Petitioner responded, "Yes, sir." The court asked the Petitioner whether counsel had "done everything that you've asked him to do in terms of getting ready for this case" and enabling "you . . . [to] make an intelligent decision that this is in your best interest?" The Petitioner responded, "Yes, sir."

Following the trial court's dialogue with the Petitioner, counsel voir dired the Petitioner about his decision to enter a guilty plea:

COUNSEL:      Now, as the judge explained to you, you were set for trial on April 25th and you and I had met on numerous occasions, both in the lockup here and in jail, is that right?

PETITIONER:     Yes, sir.

COUNSEL: And based on our conversations and based on some motions that were filed by the State and the possibility that you could get significantly more jail time if you [went] to trial and you were convicted, is it your choice today to plead guilty and take the fifteen years?

PETITIONER: Yes, sir.

COUNSEL: Is that what you want?

PETITIONER: Yes, sir.

COUNSEL: Is there anything I've done in my representation of you that you did not want me to do?

PETITIONER: No, sir.

COUNSEL: Is there anything that I failed to do in my representation of you that you wanted me to do?

PETITIONER: No, sir.

Following the hearing and upon finding that the Petitioner's guilty pleas were knowing and voluntary, the trial court accepted the Petitioner's guilty pleas. On August 9, 2011, the Petitioner filed a pro se petition for post-conviction relief, alleging, inter alia, that he received ineffective assistance of counsel and that his guilty pleas were involuntarily and unknowingly entered. The Petitioner was subsequently appointed counsel, and two amended petitions for post-conviction relief were filed on the Petitioner's behalf.

At the November 12, 2012, post-conviction hearing, counsel testified that he began representing the Petitioner in April 2010. He did not represent the Petitioner in general sessions court but requested a transcript of the preliminary hearing, provided a copy for the Petitioner, and reviewed it with the Petitioner. Counsel testified that he met with the Petitioner ten to twelve times during the course of his representation. He did not file a written motion for discovery but was provided open file discovery and met with the prosecutor on "numerous occasions regarding the discovery and portions of it that [he] felt were missing."

Counsel agreed that the affidavit of complaint reflected that the Petitioner was arrested and placed on a 48-hour hold on July 8, 2009, and that the arrest warrant was issued two days later on July 10, 2009. Counsel further agreed that the Petitioner's statement to police was made on July 9, 2009. When asked why he did not file a motion to suppress the Petitioner's statement, counsel explained,

> Based on my review of the discovery, my discussions with [the Petitioner], the fact that the victim had identified [the Petitioner] the day before . . . the 48-hour hold was placed on [the Petitioner], it was my belief that the police department did have probable cause to hold him at that point and I – as far as the 48-hour hold, I believe that that was put in the affidavit for them to cover all their bases. But it certainly appeared to me, based on the discovery materials that I had, that they did have probable cause to arrest him at the time he was being held.
>
> . . . .
>
> . . . . I made the determination that filing such a motion would be futile and would be frivolous. And having the duty not to file frivolous motions, I made the determination that it would be inappropriate to do so in this case.

Counsel did not file a motion to suppress the photographic lineup from which the victim identified the Petitioner for the same reasons. Counsel denied that the Petitioner told him that his statement had been coerced, and stated that if the Petitioner had told him that the statement was coerced, he would have filed a motion to suppress it.

Counsel testified that he told the Petitioner that he would "do everything in [his] power to try to get a mitigated offer" from the State; however, the State refused to make a mitigated offer based on the egregious nature of the offense and counsel never conveyed to the Petitioner that such an offer had been made. He denied telling the Petitioner that the Petitioner "had missed out on a 13.5 year offer that was initially offered." Counsel recalled that the Petitioner provided him several names "of some relatives and other character witnesses," but denied that the Petitioner gave him any names of alibi witnesses. He stated, "[B]ased on my conversation with him and his admission of being on the scene at the time of this incident, the issue of alibi was not even remotely relevant to this case."

Counsel recalled that in early April 2011, he met with the Petitioner to discuss the 15 year offer from the State. He explained that based on his knowledge of the law and his experience in Division Three, the Petitioner "would be likely to receive between 28 and 31 years of jail time." He met with the Petitioner "to make sure that he wished to go forward

with trial and risk getting roughly twice as much jail time." At that time, the Petitioner advised counsel that he did not want to go to trial and wished to enter a change of plea.

On cross-examination, counsel testified that he has worked on numerous felony cases and begins his investigation of cases by first speaking with the client "to try to get a full understanding of his position, who he believes might be helpful as far as witnesses, what the actual facts are." He also reviews the preliminary hearing and other statements to determine what other investigation needs to be done. He confirmed that he had an investigator assigned to work on the Petitioner's case, and stated that had the Petitioner told him of any alibi witnesses he would have "[a]bsolutely" sent the investigator to speak with those individuals. Counsel stated that despite the Petitioner's admission of involvement, there were several defense issues that he was prepared to argue had the case gone to trial, including attacking the victim's pretrial identification of the Petitioner. He met with the State to inquire about any surveillance videos from the ATMs visited during the robbery because if the Petitioner "wasn't depicted on those videos, certainly that would've been tremendous evidence or nonevidence to put forward towards his defense." The State was unable to locate any such videos.

The Petitioner testified that he was initially arrested on July 8, 2009, and placed on a 48-hour hold, during which time he was questioned by police and gave a statement. He was formally charged on July 10, 2009. The Petitioner stated that he told counsel that his statement to police was coerced, but counsel did not believe him. He also testified that he asked counsel to file a motion to suppress on his behalf, but counsel did not file any motions. The Petitioner acknowledged that during his guilty plea hearing he never told the trial court that he wanted to proceed to trial; however, he maintained that had he known about the possibility of filing a motion to suppress or the lack of video evidence, he would have proceeded to trial.

The Petitioner claimed that he gave counsel a list of alibi witnesses, but counsel did not contact any of them. The Petitioner testified that he entered a guilty plea because counsel told him there was "no possibility that [the Petitioner] can win at trial or . . . something about he wasn't going to suppress [any] statement or something like that[.]" He maintained that counsel never explained to him what an Alford plea was and agreed that at the time he entered his plea he "didn't know what in the world [he] was doing." He stated that after he pleaded guilty and received a 15 year sentence, counsel told him about an earlier offer from the State for 13.5 years.

On cross-examination, the Petitioner stated that he specifically asked counsel to file motions on his behalf. He explained that he believed his statement to police was coerced because the police "had [him] shackled to a bench and . . . they had different officers coming

in and interrogating [him]." He also maintained that the photographic lineup should have been suppressed because he was not arrested at the scene of the crime. He acknowledged that he rejected a plea offer from the State in January 2011 and decided to proceed to trial; however, in early April, less than a month before his trial date, he decided to plead guilty. He agreed that the he signed the paperwork and told the trial court he wanted to plead guilty rather than proceed to trial, but maintained that his plea was not knowing and voluntary because counsel told him there was "no possibility of [him] winning [at] trial and . . . [counsel] really just couldn't do [anything] else for [him]."

The Petitioner agreed that he signed a statement admitting his involvement in the crime; however, he claimed that he was not present at the robbery and he confessed to a crime that he did not commit. In addition to claiming that his statement was coerced by police, the Petitioner also claimed that he was under the influence of marijuana at the time that he gave his statement. Despite the influence of drugs, he recalled giving a very detailed description of the crime to the police. He also agreed that he initially told police that he was not driving the vehicle, but later changed his story and claimed that he was driving the vehicle while his co-defendant held the gun on the victim. He stated that he pleaded guilty because he did not know the law at the time. When asked why he told the trial court at his guilty plea hearing that he wanted to plead guilty and was satisfied with his attorney's representation, he indicated that he lied to the trial court.

Following the hearing, the post-conviction court set out its oral findings and denied the Petitioner relief. The court accredited the testimony of counsel and found that he properly investigated the case, did everything asked of him by the Petitioner, and "did a great job in getting a minimum sentence in this case[.]" The court rejected the Petitioner's claims that his guilty pleas were unknowing and involuntary, emphasizing the inconsistencies in the Petitioner's testimony at the guilty plea hearing and the post-conviction hearing. On December 17, 2012, the court entered a detailed written order setting out the same. In relevant part, the court reasoned and concluded as follows:

A review of the transcript of the plea hearing reflects that the trial court thoroughly reviewed and explained the [P]etitioner his rights, the offenses to which he was pleading guilty, and the sentence which he was receiving. The [P]etitioner **repeatedly** assured the trial court that he understood his rights and the consequences of his guilty plea. The Petitioner assured the trial court that the Petitioner was satisfied with the representation of counsel and that he had no complaints about trial counsel['s] representation.

The Petitioner's stance on his post-conviction testimony is inconsistent and contradictory with his testimony when he entered his guilty plea before the

trial court. The Petitioner was either untruthful at the guilty plea submission hearing or untruthful at the post-conviction evidentiary hearing. The Petitioner admitted at the evidentiary hearing that the Petitioner had lied to [the trial court] during the guilty plea submission hearing. The Petitioner's admission of perjury undermines the sanctity of the oath or affirmation to tell the truth.

. . . .

. . . . Trial counsel provided discovery to the Petitioner and discussed the discovery with the Petitioner. Trial counsel listened to, transcribed[,] and discussed the preliminary hearing with the Petitioner. Trial counsel testified that he met with the Petitioner ten to twelve times. Trial counsel testified that he received complete open file discovery from the prosecution.

. . . . [Trial counsel] testified that he never filed a motion to suppress because his tactical determination [was] that it would be futile and frivolous. Trial counsel reiterated that he has an ethical duty not to file a motion to suppress for which there is no basis . . . [and here,] he did not discern any motions that would be relevant. Counsel testified that he discussed all of the above with the Petitioner.

Trial counsel further testified that he did not file a motion to suppress because . . . based on his review of the discovery, [he] believed that the Memphis Police Department had probable cause to charge and arrest the [Petitioner]. Counsel testified that the Petitioner never asserted that his confession had been coerced[.]

. . . .

Trial counsel testified that he had no reason to question the validity of the Petitioner's confession. The Petitioner testified that he was under the influence of marijuana and had been smoking "weed" all day. The Petitioner admitted that he never told his lawyer about his alleged drug use.

. . . .

This post-conviction court takes notice of the discrepancy in the Petitioner's various positions. This court finds that the [P]etitioner understood his constitutional rights and that the [P]etitioner intelligently and knowingly waived his rights and freely and voluntarily entered his guilty pleas without

any threats, promises, pressure, force or coercion. Accordingly, the [P]etitioner has failed to establish by clear and convincing evidence any of his claims for relief. It is clear that the [P]etitioner understood his constitutional rights. Trial counsel testified further that the [P]etitioner entered the guilty plea to avoid the possibility of a jury conviction and more punishment.

. . . .

. . . . The [P]etitioner has failed to establish that he was prejudiced by counsel's representation. He failed to prove that there was a reasonable probability sufficient to undermine confidence in the outcome of the case. At the post-conviction hearing, the [P]etitioner offered no evidence, except his own testimony. Quite simply, the [P]etitioner offered nothing to support his allegations that counsel's representation prejudiced the [P]etitioner.

. . . . The Court finds that trial counsel provided the [P]etitioner with highly effective representation. . . . This Petitioner intelligently and knowingly waived his constitutional rights and entered a guilty plea to avoid a greater punishment at trial. This Petitioner robbed and carjacked the victim at gunpoint. The Petitioner forced the victim in the victim's car trunk and drove the victim around Memphis until the Petitioner wrecked the victim's car. The victim identified the Petitioner in a lineup and at a preliminary hearing. After being arrested, the Petitioner gave a very detailed confession about the commission of this crime. Therefore, this Court finds the Petitioner's allegations are not well-taken and are without merit.

It is from this order that the Petitioner now appeals.

**ANALYSIS**

On appeal, the Petitioner asserts that he received ineffective assistance of counsel and that his guilty pleas were involuntary and unknowing. The State responds that the Petitioner failed to establish that counsel's performance was deficient or that the Petitioner was prejudiced as a result of any deficiency. Further, the State argues that the Petitioner's guilty pleas were entered knowingly, intelligently, and voluntarily, and therefore, the Petitioner is not entitled to relief. Upon review, we agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that the conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both

if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

**I. Ineffective Assistance of Counsel.** The Petitioner's first ground for relief alleges that he received ineffective assistance of counsel based on counsel's failure to file motions to suppress his statement to police and the victim's photographic lineup identification. In his brief to this Court, the Petitioner emphasizes the "48-hour hold" language in the affidavit of complaint and asserts that he was illegally detained at the time that he gave his statement to police. Additionally, he notes that although the victim positively identified the Petitioner in a photographic lineup, the victim was unable to identify the Petitioner a second time. Based on this information, he argues that counsel should have filed motions to suppress both pieces of evidence, and his failure to do so amounted to ineffective assistance of counsel. He maintains that had he known about the possibility of filing these motions to suppress, he would not have pleaded guilty and would have insisted on going to trial.

We begin by noting that we need not determine whether the Petitioner's statement to police or the photographic lineup violated the Petitioner's constitutional rights because his guilty pleas waived any such complaints. See, e.g., State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999) ("[T]he voluntary entry of an informed and counseled guilty plea . . . waives all non-jurisdictional defects and constitutional irregularities which may have existed prior to the entry of the guilty plea." (citing Hicks v. State, 945 S.W.2d 706, 709 (Tenn. 1997))); Shepard v. Henderson, 449 S.W.2d 726, 730 (Tenn. Crim. App. 1969) (noting that the petitioners "waived all questions regarding the legality of their arrest" by entering voluntary pleas of guilty). Our analysis instead turns on the conduct of counsel and whether his decision not to file motions to suppress the Petitioner's statement and the photographic lineup rises to the level of ineffective assistance of counsel. In that regard, we note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and

should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

In the present case, the post-conviction court concluded that counsel provided the Petitioner "highly effective representation." The court found that counsel adequately investigated the Petitioner's case, provided discovery materials to the Petitioner, and met with the Petitioner on multiple occasions to discuss the case. The court also credited counsel's testimony that the Petitioner never told counsel that his statement was a result of police coercion or his own intoxication, and that based on his preparation for the case, counsel believed that there were no grounds upon which to file a motion to suppress either piece of evidence. Based on the record and testimony presented, the court concluded that the Petitioner failed to prove by clear and convincing evidence that counsel provided ineffective assistance of counsel.

The record does not preponderate against the post-conviction court's findings. Beyond his own testimony, which was discredited by the post-conviction court, the Petitioner put forth no evidence to establish deficient performance by counsel. Thus, we agree with the post-conviction court that the Petitioner failed to establish that counsel provided ineffective assistance of counsel. The Petitioner is not entitled to relief.

**II. Guilty Pleas.** The Petitioner's second ground for relief alleges that his guilty pleas were involuntary and unknowing. He asserts that he was unaware that counsel could have filed a motion to suppress his statement and that the State had no video evidence, and therefore, he was "not fully aware of the options available to him."

When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what

the plea connotes and of its consequence." Id. at 244. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntary and intelligently made. Id. These factors include the following:

the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Id. (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

In denying relief on this issue, the post-conviction court noted the discrepancies between the Petitioner's testimony at the guilty plea hearing and the post-conviction hearing, and found that the Petitioner "understood his constitutional rights" and "intelligently and knowingly waived his rights and freely and voluntarily entered his guilty pleas[.]" The court also credited the testimony of counsel that he fully advised the Petitioner about the evidence in the case and the Petitioner's defense options. The transcript of the guilty plea hearing confirms that both the trial court and counsel vior dired the Petitioner about his desire to plead guilty. The court thoroughly explained to the Petitioner his rights and the rights he would be giving up, as well as the consequences of entering an Alford plea. The Petitioner assured the court that he understood his rights and was voluntarily entering pleas of guilty. Additionally, counsel specifically asked the Petitioner whether he was pleading guilty based on "the possibility that [he] could get significantly more jail time if [he] went to trial and [was] convicted," to which the Petitioner responded, "Yes, sir."

As the United States Supreme Court has noted, a petitioner's testimony at a guilty plea hearing "constitute[s] a formidable barrier" in any subsequent collateral proceeding because "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v.

<u>Allison</u>, 431 U.S. 63, 74 (1977). The trial court credited the Petitioner's testimony at his guilty plea hearing over his post-conviction testimony. Nothing in the record dispels the reliability of the Petitioner's guilty plea testimony. Thus, we agree with the post-conviction court that the Petitioner has failed to prove by clear and convincing evidence that his guilty pleas were involuntary and unknowing. The Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE